FILED

04/29/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0098

DA 23-0098

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 84

STATE OF MONTANA,

Plaintiff and Appellee,

v.

LIVORIO LOERA,

Defendant and Appellant.

APPEAL FROM:   District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-21-228
Honorable Shane A. Vannatta, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Tammy A. Hinderman, Appellate Defender, Joshua James Thornton,
Assistant Appellate Defender, Helena, Montana

For Appellee:

Austin Knudsen, Montana Attorney General, Selene Koepke,
Assistant Attorney General, Helena

Matt Jennings, Missoula County Attorney, Andrea R. Haney, Deputy
County Attorney, Missoula, Montana

Submitted on Briefs:  April 18, 2025

Decided:   April 29, 2025

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1     Livorio Loera appeals from the judgment of conviction entered by the Fourth Judicial District Court, Missoula County, after a jury found Loera guilty of felony vehicular homicide while under the influence.[1]   The State charged Loera following a two-vehicle accident that resulted in the death of Jerome Socheath.  We address the following issues:

> *Issue 1: Did the District Court abuse its discretion by excluding evidence related to Socheath's seat belt use?*

> *Issue 2: Did the District Court commit reversible error by admitting evidence found in the trunk of Loera's vehicle consisting of unopened alcohol and self-help books related to overcoming addiction?*

¶2     We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

¶3     On the night of April 13, 2021, Loera drove his car the wrong way on Interstate 90. Loera—traveling west in the eastbound lane—collided with an eastbound SUV driven by Pierre Luckett and carrying passengers Alex Phoat, Riley Schwieters, and Jerome Socheath.  The SUV rolled multiple times before coming to rest in the median near the Rock Creek Exit (Exit 126).  Luckett, Phoat, and Schwieters suffered serious bodily injuries but survived.  Socheath was ejected from the SUV and died three days later from injuries sustained in the collision.

---

[1] Loera was also convicted of three counts of felony criminal endangerment.  Loera appeals only his conviction for vehicular homicide while under the influence.

2

¶4      Shortly before the collision, a semi-truck driver called Missoula County 911 at 11:23 p.m. to report a wrong-way driver traveling west in the eastbound lane of Interstate 90 a few miles east of Exit 126.  The truck driver testified he flashed his headlights to alert the car's driver, but the car continued driving against traffic.  Less than ten minutes later, another individual, Cody Hartley, called 911 to report a two-vehicle crash with one vehicle rolled on its side in the median at Exit 126.  Hartley observed Loera's damaged sedan facing west on the north shoulder of the eastbound lane with its hazard lights blinking.  Hartley testified he made contact with Loera, who walked around the passenger side of the sedan and told Hartley that everyone was fine but repeatedly stated he needed a tow truck.  Hartley drove up to the SUV while Loera remained behind at his disabled vehicle. Hartley and his passengers began assisting Luckett, Phoat, and Schwieters, who were in the process of exiting the SUV.  They discovered an unconscious Socheath approximately 75 feet east of the SUV.  Loera left the scene on foot at some point before emergency personnel arrived.  After Hartley spoke with Loera, no one saw Loera again at the accident scene.

¶5      At 1:37 a.m., Loera called 911 to report he was injured and to request help.  Based on the information Loera provided to the 911 operator, Montana Highway Patrol (MHP) Troopers Jacob Ayers and Andrew McFarland—who testified at trial—and other law enforcement officers searched for Loera.  The Troopers found Loera lying down in thick vegetation on an embankment near Exit 126's eastbound off-ramp, approximately a half-mile away from the accident site.  The Troopers noted Loera's slurred speech; watery

3

and bloodshot eyes; the presence of vomit on his clothing and blood around his mouth; and the odor of alcohol emanating from him. Loera was transported to the hospital and his blood was drawn. A toxicology test showed his blood alcohol content was .124 at the time of the blood draw, approximately four-and-a-half hours after the crash.

¶6 MHP Trooper Phillip Smart investigated the collision and testified at trial. When Trooper Smart executed a search warrant on Loera's sedan, he found the following drinks containing alcohol on the passenger-side seat and floorboard: two open and empty wine cartons, a sealed wine carton, and a sealed can of Mike's Hard Lemonade. Trooper Smart located five additional sealed drinks containing alcohol in the sedan's trunk: a can of "Joose," a 750 ml bottle of Stolichnaya vodka, and three wine cartons. The trunk also contained two self-help books, respectively titled "The Easy Way to Control Alcohol" and "I Want to Change My Life: How to Overcome Anxiety, Depression, & Addiction."

¶7 Relevant to this appeal, the State charged Loera for Socheath's death with felony vehicular homicide while under the influence, in violation of § 45-5-106, MCA (2019).[2] The State later amended the information as to the vehicular homicide offense, specifying

---

[2] The 2021 Montana Legislature substantially revised the laws regarding driving under the influence, including § 45-5-106, MCA, and § 61-8-401, MCA. *See generally* 2021 Mont. Laws ch. 498 (amending § 45-5-106, MCA, and repealing § 61-8-401, MCA). The act applied to DUI incidents taking place on or after the effective date of January 1, 2022. 2021 Mont. Laws ch. 498, §§ 45–46. Because the DUI incident in this case occurred on April 13, 2021, the 2019 statutes apply.

the State was proceeding under the theory that Loera drove while under the influence of alcohol in violation of § 61-8-401, MCA (2019).[3]

¶8      The State moved in limine to exclude evidence and testimony about the victims' seat belt use and to preclude Loera from arguing that Socheath would have survived the crash if he had worn his seat belt.  Loera opposed the motion on the grounds that the evidence was necessary to support his causation defense and was admissible under the transaction rule.  The District Court granted the State's motion, reasoning that such evidence was irrelevant to determining Loera's conduct and that the transaction rule did not apply.

¶9      Loera moved in limine to exclude evidence and testimony about the unopened alcohol and the self-help books found in his trunk.  Loera argued the evidence was irrelevant and unfairly prejudicial because he could not access the trunk from the driver's seat and the sealed alcohol could not have contributed to his impairment.  The State responded the evidence was probative of Loera's negligence.  The District Court denied Loera's motion, determining that the evidence was relevant because the evidence tended to make it more probable that Loera negligently caused Socheath's death and that the risk of prejudice did not substantially outweigh the evidence's probative value.

¶10      At trial, several witnesses testified about Socheath being ejected from the SUV. Loera argued that testimony opened the door to evidence of Socheath's seat belt use.  The

---

[3] Since recodified at § 61-8-1002, MCA.  2021 Mont. Laws ch. 498, § 2.

District Court, citing its reasoning from its order granting the State's motion in limine, concluded the testimony did not open the door because "even people who wear seat belts can be ejected from the vehicle."

¶11 Over Loera's objections, the State introduced photographs of the evidence Trooper Smart found in Loera's sedan. Eight photographs depicted the evidence discovered inside the sedan on the passenger-side: the two open and empty wine cartons, the sealed wine carton, and the sealed can of Mike's Hard Lemonade. Five photographs depicted the evidence located in the trunk: the additional sealed alcohol and the self-help books. Trooper Smart described where he found each item and addressed whether the beverages were opened and emptied, or sealed. Trooper Smart conceded that Loera did not have access to his trunk while driving and that the sealed alcohol could not have contributed to Loera's impairment. During closing arguments, the prosecutor did not refer to the unopened alcohol or the books found in the trunk.

## STANDARD OF REVIEW

¶12 We review a district court's evidentiary rulings for an abuse of discretion. *State v. Fleming*, 2019 MT 237, ¶ 9, 397 Mont. 345, 449 P.3d 1234. An abuse of discretion occurs if the court based its ruling "on a clearly erroneous finding of fact, an erroneous conclusion or application of law," or if the court otherwise acts "arbitrarily, without conscientious judgment or in excess of the bounds of reason, resulting in substantial injustice." *State v. McGhee*, 2021 MT 193, ¶ 10, 405 Mont. 121, 492 P.3d 518. A district court has broad discretion to determine the admissibility of evidence, but it is bound by the Rules of

Evidence and applicable statutes in exercising its discretion. *State v. Lake*, 2019 MT 172, ¶ 22, 396 Mont. 390, 445 P.3d 1211. Whether the court correctly interpreted and applied the pertinent rules and statutes is a question of law reviewed de novo. *Lake*, ¶ 22.

**DISCUSSION**

¶13 *Issue 1: Did the District Court abuse its discretion by excluding evidence related to Socheath's seat belt use?*

¶14 Loera contends the District Court improperly excluded evidence as to whether Socheath wore a seat belt. By doing so, Loera argues, the District Court impermissibly found the essential element of causation for the jury.

¶15 A person commits vehicular homicide while under the influence if "the person negligently *causes the death of another* human being while the person is operating a vehicle in violation of 61-8-401 [criminal offense for driving under the influence of alcohol]." Section 45-5-106(1), MCA (2019) (emphasis added). Section 45-2-201, MCA, sets forth the causal relationship between conduct and result: "Conduct is the cause of a result if without the conduct the result would not have occurred." Section 45-2-201(1)(a), MCA. To prove the causal relationship exists, the State must show the defendant's negligent conduct was the cause-in-fact of the victim's death. *State v. Bowen*, 2015 MT 246, ¶ 33, 380 Mont. 433, 356 P.3d 449. A defendant's conduct is a cause-in-fact of an event if the event would not have occurred but for that conduct; conversely, the defendant's conduct is not the cause-in-fact of the event if the event would have occurred without it. *Bowen*, ¶ 33.

7

¶16 Loera theorizes that admitting evidence of Socheath's seat belt use would have authorized the jury to find Socheath's collision injuries would not have caused his death if he wore a seat belt. The problem with Loera's argument is that the evidence is irrelevant to Loera's actions, the only fact at issue in this case. To be relevant, evidence must bear on "any fact that is of consequence to the determination of the action." M. R. Evid. 401. The question of fact presented for the jury was whether *Loera's* conduct caused Socheath's death, not whether Socheath's death would or could have been made less likely by wearing a seat belt. The State had to prove Socheath's death would not have occurred "but for" Loera's negligent act—that act being negligently disregarding that driving the wrong way on Interstate 90 at night, while under the influence of alcohol, would create a risk of death to other motorists. Put another way, to find Loera *not* guilty, the jury would have had to conclude that Socheath would have died without Loera's negligent impaired driving. The seat belt evidence did not tend to make the fact of consequence—whether Loera's conduct caused Socheath's death—more or less probable. The District Court did not abuse its discretions by excluding it as irrelevant. M. R. Evid. 401, 402.

¶17 Loera argues Socheath's seat belt use was admissible under the transaction rule. Under the transaction rule, a declaration, act, or omission that "forms part of a transaction which is itself the fact in dispute or evidence of that fact . . . is evidence as part of the transaction." Section 26-1-103, MCA. Evidence admitted pursuant to the rule must be "inextricably linked or intertwined" with the defendant's criminal conduct and explain a fact in dispute, which makes the evidence "relevant to provide a comprehensive and

complete picture" of the defendant's criminal conduct. *State v. Lake*, 2022 MT 28, ¶ 45, 407 Mont. 350, 503 P.3d 274 (internal quotations omitted) (citing *State v. Guill*, 2010 MT 69, ¶ 36, 355 Mont. 490, 228 P.3d 1152). The fact in dispute for a criminal matter is whether the defendant committed the elements of the charged offense. *See State v. Derbyshire*, 2009 MT 27, ¶ 29, 349 Mont. 114, 201 P.3d 811.

¶18 The District Court concluded the transaction rule did not apply because the evidence of Socheath's seat belt use was neither inextricably linked to, nor explanatory of, Loera's conduct. Loera maintains evidence of Socheath's seat belt use is "inseparably related to the charged offense because it is explanatory of causation." The State argues the transaction rule contemplates the admission of third-party acts only to the extent that the evidence relates to the conduct of the defendant.

¶19 Evidence of Socheath's seat belt use does not fall within the ambit of the transaction rule. The disputed facts in this case involved the manner in which Loera operated his motor vehicle while under the influence of alcohol, whether he did so negligently, and whether by doing so, his conduct caused Socheath's death. Section 45-5-106, MCA (2019). Loera conflates the rule's requirements and fails to demonstrate an inextricable link between Socheath's seat belt usage in an unrelated SUV traveling in the correct direction and Loera's negligent act of driving the wrong way on Interstate 90 while impaired. The evidence may provide some context as to the reason Socheath was ejected from the SUV, but the evidence does not explain *Loera's conduct* that formed the basis of the charged offense and thus has no bearing on causation. Merely providing context as to the

9

circumstances under which the offense occurred does not justify admission of evidence under the transaction rule. *State v. Hardin*, 2023 MT 132, ¶ 19, 413 Mont. 26, 532 P.3d 466 (citing *State v. Sage*, 2010 MT 156, ¶ 39, 357 Mont. 99, 235 P.3d 1284). The District Court correctly concluded evidence of Socheath's seat belt use was irrelevant to the issue of causation and inadmissible under the transaction rule. The District Court did not abuse its discretion by granting the State's motion to exclude evidence of seat belt usage.

¶20    *Issue 2: Did the District Court commit reversible error by admitting evidence found in the trunk of Loera's vehicle consisting of unopened alcohol and self-help books related to overcoming addiction?*

¶21    Evidence is relevant if it tends to "make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." M. R. Evid. 401. Irrelevant evidence is inadmissible. M. R. Evid. 402.

¶22    The District Court ruled that the evidence of the unopened alcohol was relevant because the unopened alcohol made it more likely that Loera consumed the open alcohol while driving and negligently caused Socheath's death while impaired than without the unopened alcohol. The court determined the self-help books were relevant to Loera's negligence because the books showed Loera's cognizance of his problematic drinking patterns and made it more likely Loera had a heightened awareness of the dangers of drunk driving.

¶23    Citing *State v. Ingraham*, 1998 MT 156, 290 Mont. 18, 996 P.2d 103, Loera argues the presence of the trunk evidence was irrelevant to determining his negligence because he could not access the unopened alcohol and self-help books from the driver's seat, and the evidence could not have caused his impairment. The State responds the trunk evidence tangibly connected the presence of alcohol, his alleged consumption, and his negligent act, whether the alcohol was open or not.

¶24    In *Ingraham*, the defendant was charged with negligent homicide and criminal endangerment. *Ingraham*, ¶ 26. The defendant was accused of causing a two-vehicle accident on Highway 93 while driving under the influence, killing the other vehicle's driver and severely injuring her passenger. *Ingraham*, ¶ 15. The defendant moved in limine to exclude evidence showing the presence of prescription and over-the-counter drugs in his blood and urine and of medication bottles found in his car. *Ingraham*, ¶ 29. The trial court denied the motion and admitted the evidence at trial. *Ingraham*, ¶ 30. The State's forensic toxicologist testified about the amount and nature of each chemical substance found in the defendant's system and car, but the toxicologist admitted none of the substances detected would have impaired the defendant's ability to drive. *Ingraham*, ¶¶ 42–45. Because the State "failed to demonstrate that any of the drugs detected in [the defendant's] blood and urine, or found in his car, were causally connected to the accident," we held that the evidence was irrelevant to determining the defendant's negligence. *Ingraham*, ¶ 46.

¶25    *Ingraham* is instructive to our resolution of this issue. The State had to prove Loera negligently drove while under the influence causing Socheath's death. A person acts

11

negligently with respect to a result (*i.e.*, death of another) when the person consciously disregards a risk that the result will occur, or when the person disregards a risk of which the person should be aware that the result will occur. Section 45-2-101(43), MCA. The State argues the self-help books "suggested that Loera was aware he was addicted to alcohol, and thus aware of the risk of drinking and driving," but the brief testimony elicited about the books only concerned their presence in the trunk and not what the books revealed about Loera's awareness or intoxication at the time of the accident. Moreover, the photograph of the books had no bearing on Loera's awareness of the risks of drunk driving—risks that are patently obvious to any driver, whether or not that driver struggles with addiction. Regarding the unopened alcohol found in the trunk, Trooper Smart testified the seals were intact, the containers were full, and Loera could not have accessed the trunk while driving. The uncontroverted evidence presented to the jury established that the unopened alcohol did not have "any impairing effect whatsoever upon [Loera's] ability to drive on the evening of the accident." *Ingraham*, ¶ 46. The relevance of the evidence found in Loera's trunk depended on whether the State linked the trunk evidence to the cause of the accident. *Ingraham*, ¶ 42. Without that link, the evidence was irrelevant to the question of Loera's negligence. *Ingraham*, ¶ 46. The District Court abused its discretion by admitting evidence of the self-help books and unopened alcohol found in Loera's trunk.

¶26 The State contends that even if the District Court erred in admitting the trunk evidence, the error was harmless. We have adopted a two-step analysis to determine

12

whether an error violated a defendant's right to a fair trial and is reversible, or whether the error was harmless. *State v. Van Kirk*, 2001 MT 184, ¶ 37, 306 Mont. 215, 32 P.3d 735. First, we characterize the error as structural or trial error. *Van Kirk*, ¶ 37. Structural error affects the framework within which the trial proceeds, while trial error usually occurs during the presentation of evidence to the jury. *Van Kirk*, ¶¶ 38, 40. In this case, the improper admission of the trunk evidence is trial error as the irrelevant evidence was presented to the jury.

¶27 Second, we review trial error qualitatively for prejudice relative to the other evidence introduced at trial using the cumulative evidence test. *Van Kirk*, ¶ 40. If the tainted evidence proved an element of the offense, then the State must direct us to admissible evidence proving the same facts as the tainted evidence and demonstrate by comparison that qualitatively, there is no reasonable possibility the tainted evidence contributed to the conviction. *Van Kirk*, ¶ 47.

¶28 The State purportedly introduced the trunk evidence to prove Loera's negligence and his intoxication, which are elements of vehicular homicide while under the influence. The jury was presented with cumulative admissible evidence proving the same facts as the tainted trunk evidence. Loera did not contest that he drove the wrong way on Interstate 90 at highway speeds. Hartley testified that Loera told him at the scene that everyone was fine when that was obviously not the case. Loera left the scene on foot, called 911 more than two hours after the crash, and was found approximately a half-mile from the accident. The Troopers who located Loera observed indicators of intoxication, including Loera's red

13

and glossy eyes, the presence of vomit and blood on his person, his slurred speech, and the smell of alcohol emanating from him. The blood test taken approximately four-and-a-half hours after the crash indicated that Loera's blood alcohol content was .124. Finally, Trooper Smart found two empty wine cartons on the passenger-side of the sedan. The State more than satisfied its burden of proving Loera's negligence and intoxication with this other admissible evidence. After reviewing the quality of the tainted trunk evidence relative to the quality of the admissible evidence, we conclude there is no reasonable possibility that the trunk evidence contributed to Loera's conviction. The photographs clearly showed what alcohol was open and empty and what alcohol remained sealed. Trooper Smart testified specifically about where he found each container and acknowledged that Loera had not consumed, nor had access to, the contents of his trunk. The State did not use the tainted evidence to support its closing argument or summation. Accordingly, the trial error was harmless and Loera's right to a fair trial was not prejudiced.

## CONCLUSION

¶29 The District Court did not err in granting the State's motion in limine excluding evidence of seat belt usage. The District Court erred by admitting the irrelevant trunk evidence, but the error was harmless. Loera's judgment of conviction is affirmed.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ KATHERINE M BIDEGARAY

14

Chief Justice Cory J. Swanson, specially concurring.

¶30 I concur with the result, but I write separately to address that it was not an abuse of discretion to admit the evidence in the trunk of the car. The majority recognizes the State introduced the trunk evidence to prove Loera's negligence *and* his intoxication. Opinion, ¶ 28. While I agree the evidence was not relevant to show his current intoxication, I disagree the evidence was not relevant to his negligence. Relevance is not a high bar: "Relevant evidence means evidence having *any tendency* to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M. R. Evid. 401 (emphasis added).

¶31 The books are relevant to show Loera was aware of the dangers of driving under the influence. The Majority states the books "had no bearing on Loera's awareness of the risks of drunk driving—risks that are patently obvious to any driver, whether or not that driver struggles with addiction." Opinion, ¶ 25. Perhaps we believe that is patently obvious, but the State still has to prove it to a jury. The Court should not diminish the State's burden of proof on whether Loera acted negligently while driving after consuming alcohol, which is an element the State must prove beyond a reasonable doubt. *See, e.g.*, *Coluccio v. Montana*, No. CV 10-64, 2011 WL 554086, at *2 (D. Mont. Feb. 8, 2011), *aff'd* 469 Fed. App'x 650 (9th Cir. 2012) ("If persuaded to draw inferences in Coluccio's favor, a reasonable juror could have found that, although Coluccio's ability to drive was diminished, he did not drink so much that his decision to drive was a gross deviation from the standard of care a reasonable person would observe.").

15

¶32 But even if true "any driver" understands the risks of drunk driving, this does not mean the books are irrelevant to Loera's understanding of the risks and whether his disregard of the risk "involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." Section 45-2-101(43), MCA. I would suggest this evidence's probative value is not substantially outweighed by the danger of unfair prejudice or needless presentation of cumulative evidence. M. R. Evid. 403. The District Court reasoned the books made it more likely Loera had a *heightened* awareness of the dangers of drunk driving. The evidence was not a needless presentation of cumulative evidence; a jury could decide it tends to show Loera was aware of the risks he was disregarding.

¶33 The unopened bottles of alcohol in the trunk are similarly relevant because the jury could infer Loera had the ability to store alcohol out of reach while he was driving but instead chose to store alcohol up front where he could access and consume it while driving. The jury could infer that by choosing to store alcohol within reach, Loera was consciously disregarding the risk the result would occur.

¶34 To prove its case, the State had to show Loera (1) negligently (2) caused the death of another human being (3) while operating a vehicle (4) under the influence of alcohol or drugs. Section 45-5-106, MCA. Unlike *Ingraham*, which evidence focused on whether the medications caused the defendant to be under the influence, the evidence here goes towards the negligent conduct the State was required to show. *See Ingraham*, ¶ 46 ("[N]one of the drugs detected in Ingraham's system, or found in his car, had any impairing

16

effect whatsoever upon his ability to drive on the evening of the accident."). *Ingraham* does not control here. The evidence at issue tended to make the fact Loera was acting negligently more probable. It was relevant for that purpose and the District Court did not abuse its discretion in admitting it. "The question is not whether this Court would have reached the same decision, but, whether the district court abused its discretion in reaching the decision to deny admissibility." *Simmons Oil Corp. v. Wells Fargo Bank, N.A.*, 1998 MT 129, ¶ 17, 960 P.2d 291, 289 Mont. 119.

/S/ CORY J. SWANSON

Justice Jim Rice joins the Special Concurrence of Chief Justice Swanson.

/S/ JIM RICE